◼ COMMERCE & INDUSTRY INSURANCE COMPANY, Appellant, v LIB-COM, LTD., et al., Respondents, et al., Defendants. [699 NYS2d 16] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered July 26, 1998, which, insofar as appealed from, granted defendants' motion to dismiss the complaint based on plaintiff's non-compliance with discovery demands, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, the motion denied, the complaint reinstated, and the matter remanded for further proceedings.

This is an action for damages sustained by plaintiff as a result of alleged insurance fraud by defendants. The Lib-Com defendants, who were named insureds under a property insurance policy issued by plaintiff, filed a claim for $243,083.83 in connection with water damage to a warehouse on October 15, 1990. Plaintiff retained American International Adjustment Co. (AIAC) to investigate the claim. Defendant Lombardo, the AIAC claims adjuster responsible for this case, retained defendant Cronin to estimate the value of the damaged property.

The insureds retained defendant Federated and its principal, defendant Yutkowitz, to represent the Lib-Com group as a public adjuster in presenting the claim.

Subsequent to plaintiff's payment of the claim in December 1990, plaintiff learned that Cronin and Lombardo had pleaded guilty in Federal court to committing insurance fraud by inflating numerous property damage claims, including the Lib-Com claim at issue here. In September 1993, plaintiff complied with a subpoena from the office of the United States Attorney for the Eastern District of New York, directing plaintiff to turn over the Lib-Com claims file to the offices of the United States Postal Inspector for use in the ongoing Federal criminal investigation.

Plaintiff then commenced the instant lawsuit to recover the $243,083.83, plus punitive damages. The order appealed from involves plaintiff's alleged non-compliance with two of approximately 20 interrogatories served by defendants Federated and Yutkowitz in 1995. Item 4 of the supplemental interrogatories sought specifics regarding each claim on which Cronin worked between October 15, 1987 and October 15, 1993. Item 16 of the initial interrogatories requested the identity of all persons who, on behalf of plaintiff, had had contact with Federal officials regarding the prosecution of Lombardo and Cronin.

Plaintiff served a series of responses in 1996. With respect to Item 4, plaintiff initially only provided information about Cronin's work on the Lib-Com claim. When the Federated defendants asked for additional materials, plaintiff's counsel provided the affidavit of Nancy Cooper, the claims supervisor at plaintiff's parent company AIG, who averred that it would be impossible to identify all claims files on which Cronin worked during that six-year period. As for Item 16, plaintiff objected on the grounds that it sought irrelevant information regarding events that occurred after payment of the claim, as well as confidential information that was the subject of an ongoing investigation.

On November 4, 1996, the court referred the issue of plaintiff's compliance with discovery demands to a Referee and warned that the complaint would be dismissed if the Referee found non-compliance. On November 12, plaintiff filed a second amended response to the interrogatories, still asserting confidentiality as to some material covered by Item 16 but providing additional specifics, including a copy of the 1993 Federal subpoena.

At the hearing on June 17, 1997, the Referee found that

plaintiff had complied with the disputed interrogatories to the extent that they sought relevant information, and that the additional information sought by the Federated defendants was not evidentiary matter necessary to the defense of the action. Plaintiff moved to confirm the report and defendants moved to reject it and to dismiss the complaint.

At oral argument on December 15, 1997, the court expressed displeasure with the Referee's report but gave plaintiff until January 5, 1998 to attempt to locate more Cronin claims files. On that date, plaintiff provided a handwritten list from Cronin of all the files he could recall working on, turned over some additional files uncovered by AIG's Fraud Investigations Department, and represented that AIG would continue searching for documents and turning them over when found. The court ordered depositions on the reasonableness of plaintiff's reliance on Nancy Cooper's affidavit. Before depositions commenced, plaintiff informed defendants that an individual with special computer expertise at AIG had discovered a way to produce a computer-generated list of Cronin's claims files, which would be forthcoming. Defendants nonetheless proceeded with depositions and then moved to dismiss the complaint, arguing that plaintiff's ultimate success in producing the list proved that plaintiff had acted in bad faith when it initially alleged that such a list could not be made.

Plaintiff cross-moved for a protective order and an order directing defendants to proceed with discovery. It alleged that dismissal was inappropriate because it had made well-documented efforts to comply even though the Referee had deemed the interrogatories overbroad. Moreover, the merits of the action were evinced by Cronin's and Lombardo's guilty pleas.

On July 6, 1998, the court denied plaintiff's motion to confirm the Referee's report. The Judge opined that the Referee had exceeded the scope of his mandate by passing judgment on the propriety of the discovery demands. The Judge concluded that plaintiff had been "playing games" and consistently flouting his orders, justifying dismissal of the complaint as a sanction for contumacious behavior. This decision was an improvident exercise of discretion.

As noted in the order appealed from, this Court has repeatedly found this Justice to be too precipitous in striking a party's pleadings based on imperfect compliance with discovery demands (e.g., First Bank v Motor Car Funding, 257 AD2d 287; Cantos v Castle Abatement Corp., 251 AD2d 40; Corner Realty 30/7 v Bernstein Mgt. Corp., 249 AD2d 191; Kaplan v

*KCK Studios*, 238 AD2d 264). The drastic remedy of striking a party's pleadings is only justified where the moving party has clearly shown that its opponent's nondisclosure was willful, contumacious or due to bad faith (*Remuneration Planning & Servs. Corp. v Berg & Brown*, 151 AD2d 268, 269). It is not a sanction to be routinely imposed whenever a party fails to comply with *any* item of discovery, without regard for that party's substantial compliance efforts or its legitimate objections to the scope of an opponent's demands (*Corner Realty 30/7 v Bernstein Mgt. Corp.*, *supra*, at 194). As we held in *Kaplan* (*supra*, at 265): "The IAS Court erred in announcing that anything other than a ruling by the Referee that plaintiff had fully complied with all requests would result in dismissal of the complaint and further erred when it carried out that threat. The dismissal of the complaint was an inappropriate response to plaintiff's supposed lapse and far more than what was necessary to protect defendants' legitimate interests."

Here, not only did the IAS Court improperly warn that the plaintiff's pleadings would be stricken if the Referee found noncompliance with the two interrogatories, but the court then unreasonably disregarded the Referee's subsequent finding of compliance and struck the complaint. Contrary to the Judge's belief, consideration of the appropriateness of Items 4 and 16 was within the Referee's powers. Indeed, a meaningful analysis of a party's compliance must consider not just whether the produced items are responsive to the demands, but also whether the demands themselves were proper (*see, Corner Realty 30/7 v Bernstein Mgt. Corp.*, *supra*, at 194 [court should not evaluate plaintiff's compliance without considering plaintiff's objections to scope of discovery demand]). Otherwise, a party could be sanctioned for failing to respond to any demand, no matter how irrelevant or overbroad.

Any deficiencies in plaintiff's document production were not so egregious as to outweigh the general policy that actions should be resolved on their merits (*Remuneration Planning & Servs. Corp. v Berg & Brown*, *supra*, at 269), particularly since the confessions by Cronin and Lombardo suggest that plaintiff has a meritorious cause of action. Though apparently believing that the requested Cronin files were unavailable, plaintiff continued to look for the files to the best of its ability. It is certainly plausible that an insurer's files would not be organized by the name of the adjuster who worked on the claim. Plaintiff's prompt disclosure of the computer expert's ultimate success in generating a list belies the Judge's bald conclusion that plaintiff habitually withheld documents without justifica-

tion. Moreover, plaintiff promptly turned over all Cronin files that were directly relevant to this action. As for the documents pertaining to the Federal investigation, neither defendants nor the IAS Court pointed to any evidence that plaintiff's confidentiality and relevance objections were made in bad faith. A party's dissatisfaction with its opponent's document production is an insufficient basis for a finding that the opponent was willful and contumacious (*Miller v Duffy*, 126 AD2d 527, 528). Even defendants admit that plaintiff fully responded to all of their other interrogatories. Under these circumstances, it was error to dismiss the complaint (*First Bank v Motor Car Funding, supra*). Concur—Sullivan, J. P., Rosenberger, Lerner, Rubin and Andrias, JJ.